LOBRANO, Judge.
This paternity suit is brought by Brenda Hicks (appellee) seeking to have Manuel John Ellis (appellant) declared the natural father of the minor child, Dana Rae Ellis. The lower court found appellant to be the father and he perfects this appeal.
There are two issues presented for our review. First, appellant argues that the trial erred as a matter of law in appointing only one expert to render blood test analysis. In connection with that same issue, he also argues that the procedures utilized by the expert are tainted, and should not have been admitted in evidence. Second, appellant argues that appellee failed in her burden of proof.
Both parties testified that commencing in August of 1982, after having met at a special education seminar, they became friends and engaged in sexual intercourse. Appellee contends that this friendship developed rapidly into a romance and that they engaged in sexual activity from their first meeting in August thru February, 1983. Appellant contends that he and ap-pellee’s relationship was based, not on romance, but a mutual professional interest in teaching. His testimony is that they had sexual intercourse only three or four times after their meeting in August, and that the last occurrence was in the middle or latter part of October, 1982. The child was bom August 28, 1983.
Testimony elicited from appellee’s sister and friends, who knew both parties, favors the conclusion that both parties were involved in a romantic relationship during this period. Furthermore, although appellant denies sexual activity with appellee after October of 1982, Ms. Sametta Ray-born, a friend of appellee, testified that in late January or early February, 1983 she stopped at appellee’s home in the afternoon to pick up a coat. On that visit she saw appellant in bed at appellee's home. Although he had a sheet or cover over the lower part of his body, he was nude from the waist up with his trousers and shoes on the floor. Appellee states that they had intercourse that afternoon. Appellant denies this, and claims he merely spent the afternoon there because he was not feeling well.
Dr. Gardner, appellee’s physician, testified that in January of 1983 appellant accompanied appellee to her office at which time they discussed the pregnancy. Both Dr. Gardner and appellee testified that appellant offered to pay the medical bills. Appellant admits the visit, but denies he offered to pay the bills.
Subsequent to the birth of the baby appellant admits visiting appellee and holding the child. However he denies appellee’s statement that he looked at the baby and remarked on the similarity of her toes and the color of the skin.
*1005 Appellee testified that during her pregnancy appellant gave her assistance around the home, and made repeated statements that he wanted a son. She denies having sexual relations with any other man. Appellant denies being the father and asserts he never indicated he wanted a son.
In accordance with the provisions of La. R.S. 9:396 and 397, and upon motion of appellee, the trial court appointed Dr. Leslie Bryant to make the necessary blood studies. The results of his tests as indicated by his report and his testimony, are that there is a 99.6% probability that appellant is the father, and a .4% probability he is not.
Appellant argues that La.R.S. 9:397 requires the trial court to appoint at least two experts. That statute provides:
“The tests shall be made by experts qualified as examiners of blood types who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts, qualified as examiners of blood types, perform independent tests under order of court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court.”
Appellant contends that the use of the plural form in the statute mandates at least two experts. He further cites the case of McGowan v. Poche, 393 So.2d 278 (La.App. 1st Cir.1980).
We distinguish the McGowan case. The issue confronting the Court in that case was the use of a summary judgment in a paternity case. We acknowledge that there is language, in dicta, which indicates the Court felt that more than one expert is required, however we find it unpersuasive. In the Second Circuit case of State thru Dept. of Health v. Smith, 459 So.2d 146 (La.App. 2nd Cir.1984) the court found no error in the fact that only one expert testified.[1]
We are persuaded by the last sentence of La.R.S. 9:397 which gives the trial court discretion in the number of experts to be appointed. Recent decisions in this circuit have affirmed findings of paternity wherein only one expert was appointed by the Court. See, Jones v. Thibodeaux, 445 So.2d 44 (La.App. 4th Cir.), writ denied 448 So.2d 112 (La.1984); Schwab for and on behalf of Schwab v. Galuszka, 463 So.2d 737 (La.App. 4th Cir.), writ denied 464 So.2d 1386 (La.1985). Furthermore we note from a review of the record that appellant made no objections at the trial level of the appointment by the Court of only one expert, nor did he move to have additional experts appointed. Clearly he could have also retained his own expert, which he did not do. We find no merit to this argument.
Appellant also argues that the blood tests in the instant case were somehow tainted by the fact that technicians assisted Dr. Bryant in the performance of his duties. In Schwab, supra, we considered and rejected similar contentions holding that when tests are performed under the supervision of a trained expert such as Dr. Bryant, and there is no evidence that they were not performed in accordance with the standard procedures, then the fact that technicians participated in the testing goes to the weight of the evidence rather than its admissability. We find no merit in this argument.
In her oral reasons for judgment the trial court stated that she was convinced the sexual relationship between the parties continued to February, 1983, which would cover the period of conception. That fact coupled with Dr. Bryant’s report resulted in the Court’s conclusion that appellant was the father.
*1006 The burden of proving paternity is by a preponderance of the evidence. Schwab, supra. It is well established in our jurisprudence that we will not disturb a trier of fact’s conclusions unless manifestly erroneous. We find no such error in this case.
The trial court’s conclusion that the parties had an on going sexual relationship from August 28, 1982 thru February, 1983 is supported by a preponderance of the testimony. Appellee denies having intercourse with other men during the subject period. Appellant’s testimony that he and appellee did not have sexual relations subsequent to the latter part of October, 1982 and were not romantically involved is suspect in view of other evidence to the contrary. Both parties acknowledge that no form of birth control was used by either. The conclusion of Dr. Bryant that there is a 99.6% probability that appellant is the father is uncontradicted.
We cannot say that the trial court was manifestly erroneous in her determination. The lower court judgment is affirmed.
AFFIRMED.

. However, it can be argued that the holding is somewhat qualified because the report was signed by two other experts.